IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO. 3:05cr224-A |
| | ) | WO |
| RONALD DEVOISE | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Defendant Ronald Devoise has filed a motion to suppress a statement that he gave on December 24, 2004 to an Auburn, Alabama police officer. For the reasons discussed below, the motion is due to be denied.

**Facts**

On August 17, 2004, police officers were on foot patrol in the parking lot of a housing authority property in Auburn, Alabama when they saw the defendant, who was holding an automatic pistol out the window of a car. After observing defendant "rack" the handgun, an officer approached and recognized the defendant as Ronald Devoise, determined that he did not have a permit for the weapon, and arrested him.

Months later, on December 24, 2004, Devoise was picked up for a misdemeanor shoplifting offense that occurred downtown at an all-night convenience store. One of the officers who was investigating the shoplifting knew that Detective Randy Armstrong wanted to talk with Devoise about the gun offense for which he was arrested earlier in the year. The officer called Armstrong in the early hours of the morning to come in and interview

Devoise.[1]

After arriving at the police station, Armstrong met with Devoise for the purpose of interviewing him. He asked Devoise whether he could read or write, and Devoise told Armstrong that he could not. Armstrong then read the Auburn police department's rights waiver form to Devoise. The waiver form, filled out by Armstrong, gave Devoise's name, age, address, and the highest grade he completed in school (tenth), and indicated that Devoise could not read and write. The form provided:

> I have been advised that I must understand my rights before I answer any questions. I have the right to remain silent. Anything I say will be used against me in court. I have the right to talk to a lawyer for advice before I answer any questions and the have him with me during questioning. I have the same right o the advice and presence of a lawyer, even I cannot afford one. The police cannot furnish me with a lawyer, but one will be appointed for me, if I wish, by the court. If I wish to answer questions now without a lawyer present, I also have the right to stop answering questions at anytime until I talk to a lawyer.

Government's Exhibit 1. The waiver portion of the form indicated that the above rights had been read to Devoise. It further stated:

> I understand what my rights are. I am willing to answer questions and make a statement. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure of any kind has been used against me.

Id. Armstrong asked Devoise whether he understood the form that he had read to him, and

---

[1] Armstrong testified that be believed that the shoplifting incident took place about an hour prior to the interview. The interview began at approximately 3:56 a.m., when Armstrong read Devoise the rights waiver form, and ended at approximately 4:43 a.m., when Armstrong signed Devoise's written statement as a witness.

Devoise said that he did and signed the form. Armstrong then signed the form as a witness.

Thereafter, Armstrong took a statement from Devoise about both the shoplifting offense and his prior gun possession. Armstrong wrote the statement himself because his secretary had to type it and she was familiar with his handwriting, and also because Devoise had said that he did not know how to read and write. The statement read as follows:

> My name is Ronald Devoice [sic] and I am 42 yrs old. Det. Armstrong read my rights to me and I understand them this is a true and voluntary statement. Tonight I was drinking and celebrating. I asked Tracy Welch to take me to the store to get some beer. I didn't have any money to buy any beer. I didn't tell her I was going to take it. She was just doing a freind [sic] a favor. I went in and talked to the dud[e]. I walked out with 2 cases without paying for it. Tracy didn't know I took it.
>
> A while back I was with another dud[e]. I had a gun that belong to Felicia Coopers Dad. It was a .380. I wanted to play with it. I shot it one times and then it jammed. the other dud[e] tried to unjam. The gun not stole and has not been used in anything.

Government's Exhibit 2. After Armstrong wrote the statement, he read it back to Devoise. Devoise appeared to Armstrong to understand the statement. Devoise signed the statement, and Armstrong signed as a witness.

## Discussion

Defendant argues that his statement should be suppressed because he was not read his Miranda rights prior to making the statement and/or because he could not make a knowing, voluntary and intelligent waiver of his rights due to his intoxication. Detective Armstrong testified at the suppression hearing that he believed that Devoise was under arrest on the shoplifting charge when Armstrong took the statement. Accordingly, the court will treat the

interview in question as a custodial interrogation.

The court finds Devoise's contention that he was not read his Miranda rights prior to the interview to be without merit. Detective Armstrong testified that he read the rights form to Devoise before taking his statement, and that Devoise signed the rights form. The court finds Armstrong's testimony credible and concludes that Devoise was, in fact, properly advised of his rights before he made any statement.

Even when a suspect is advised of his rights, the government cannot introduce a statement taken without the presence of an attorney without first showing that the suspect made a voluntary, knowing, and intelligent waiver of his right to counsel. Hart v. Attorney General of State of Florida, 323 F.3d 884, 891 (11th Cir. 2003). The inquiry concerning whether Devoise's waiver was voluntary, knowing, and intelligent is twofold:

> "First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the 'totality of the circumstances surrounding the interrogation' reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived."

Id. at 892 (citation omitted). "The two dimensions of the waiver inquiry reflect two different concerns. '[T]he voluntariness determination ... is designed to determine the presence of police coercion.'... By ensuring that a waiver is uncoerced, and thus voluntary, courts 'deter[] lawless conduct by police and prosecution.'... On the other hand, the 'knowing and intelligent' requirement flows from the fifth amendment guarantee itself.

Because of the primacy of the fifth amendment right against self-incrimination, and because of the unique circumstances of custodial interrogation, the Constitution requires that the police take the reasonable step of ensuring that the suspect understands his basic fifth amendment rights and the consequences of his decision to waive those rights." Smith v. Zant, 887 F.2d 1407, 1427-1428 (11th Cir. 1989) (citations and some internal quotation marks omitted). "The 'voluntariness' inquiry is concerned solely with the defendant's motive in waiving his Miranda rights. The 'knowing and intelligent' inquiry, on the other hand, does not look to the defendant's motive, nor does it consider post hoc the efficacy of the waiver; instead, the 'knowing and intelligent' inquiry focuses solely on whether the suspect understands what he is doing." Id. at 1428.

Devoise contends that his waiver of Miranda rights was not made knowingly and voluntarily because he was intoxicated at the time of the interview. Although defendant's motion to suppress does not specifically maintain that Devoise was coerced or intimidated into signing the form, it does suggest that Devoise may have been deceived into doing so – that is, the motion argues that the statement "was never read to him," that it was "signed by him because he was told his signature was necessary for his release," and that "[h]is signature simply reflects the fact that he signed a piece of paper at the place he was directed to sign." Motion to Suppress at 2-3. Accordingly, the court applies the first part of the two part test to determine whether Devoise's relinquishment of his rights was voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception, as well as the second part of the test to determine whether or not the

waiver was made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. The law is clear that "[n]either intoxication nor withdrawal necessarily invalidates a confession." United States v. Castanon, 88 Fed.Appx. 965, 2004 WL 291479, *1 (8th Cir. 2004) (unpublished); see also Grayson v. Thompson, 257 F. 3d 1194, 1230 (11th Cir. 2001). Where alcohol use is alleged, the court still must consider all the circumstances in making a voluntariness determination.

In this case, the court has before it no evidence that Devoise was intoxicated when he signed the statement at issue other than Armstrong's acknowledgment that he was aware that Devoise had a history of arrests for public intoxication, and Devoise's own statement that he "was drinking and celebrating" that night and had stolen two cases of beer.[2] Armstrong testified that Devoise was cooperative and alert during the interview. It did not appear to Armstrong – who has 17 years of police experience and has been trained to recognize the signs of intoxication – that Devoise was too intoxicated to understand the rights form. According to Armstrong, Devoise did not slur his speech, nod off, pass out, get sick, or otherwise show signs of intoxication.

Devoise gave his statement in an interview room, sitting in a chair next to Armstrong's desk. He was not handcuffed and, although Armstrong was armed, the officer

---

[2] Defendant's suggestion that his signatures on the two forms prove impairment is not persuasive. Although the writing is somewhat irregular, and the two signatures are different, nothing about these signatures supports a finding – especially absent expert testimony – that defendant's poor penmanship is due to intoxication rather than illiteracy, sloppiness, or limited handwriting skills.

did not draw his weapon at any time. The interview took about 45 minutes. Armstrong made no promises or threats to Devoise, nor is there any evidence before the court that Armstrong attempted to deceive the defendant.

During the interview, Devoise was able to remember specific facts about the August incident – for example, the fact that the gun belonged to Felicia Cooper's father, that it was a .380 caliber, that he had thought it would be fun to play with, that he shot the gun one time and it had jammed, that there was an attempt to clear the jam, and that the gun was not stolen and had not been used in a crime. With regard to the incident that occurred on the night he gave the statement, Devoise recalled that he had been drinking and celebrating with Tracey Welch, that he had gone to the store and gotten two cases of beer without paying for them, and that Welch did not know that he took the beer. Armstrong characterized Devoise's statements as containing a high level of detail, and said that he would not have expected that level of detail from a highly intoxicated individual.

Under the totality of the circumstances, the court concludes that Devoise's statements were voluntary in the sense that they were the product of a free and deliberate choice rather than intimidation, coercion, or deception, and that Devoise waived his rights with a full awareness of both the nature of the rights being abandoned and the consequences of the decision to abandon them. Because the totality of the circumstances surrounding the interview reveal both an uncoerced choice and the requisite level of comprehension, the court finds that Devoise made a valid waiver of his <u>Miranda</u> rights, and his statements are not due to be suppressed.

**Conclusion**

Accordingly, it is the Recommendation of the Magistrate Judge that defendant's motion to suppress be DENIED.

It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation on or before February 20, 2006. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to. Frivolous, conclusive or general objections will not be considered by the District Court.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a de novo determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. Nettles v. Wainwright, 677 F.2d 404 (5th Cir. 1982). See Stein v. Reynolds Securities, Inc., 667 F.2d 33 (11th Cir. 1982). See also Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981, en banc), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

DONE, this 9th day of February, 2006.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
UNITED STATES MAGISTRATE JUDGE